31 C.C.P.A. (Patents)

## In re TAYLERSON.

### Patent Appeal No. 4875.

Court of Customs and Patent Appeals.

April 4, 1944.

John E. Jackson, of New York City (Bonifant Hamilton and Edward W. Shepard, both of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

Appellant's application for a patent relating to a "Chromium-Plated Conductor Roll" was filed in the United States Patent Office on April 28, 1939. It contained three claims, which were rejected by the Primary Examiner upon certain references, whereupon appellant canceled the claims and substituted therefor the appealed claims 4 and 5. These claims were rejected upon the following prior art references: Levy et al., 1,952,762, Mar. 27, 1934; Greer et al., 2,035,312, Mar. 24, 1936; Wynne-Williams (Br.), 469,681, July 30, 1937; Brown, 2,-203,253, June 4, 1940.

Appellant sought to amend his original specification and the claims at different times during the prosecution of the application, covering the period up until the last decision of the Board of Appeals in January of 1943. New claims were sought to be added before the board, and also a substitute specification and additional drawings were submitted. These were properly disallowed on the grounds of new matter and untimeliness. Appellant filed with the board a lengthy petition for reconsideration and submitted therewith two lengthy affidavits directed principally to the meaning of the term "conductor roll", which affidavits were not received or considered by the board.

From the decision of the board affirming the examiner's rejection, appellant has appealed to this court.

The appealed claims read as follows:

"4. In apparatus for electrodepositing a metal on a strip of dissimilar metal, a conductor roll for contacting and supplying electric current to said strip as it moves through said apparatus; said conductor roll comprising a closed hollow metallic tubular member possessing good electrical conductivity, a hard metallic protective coating on the outer surface of said closed hollow metallic tubular member, said coating being resistant to chemical attack by the solution used in the electroplating process.

"5. In apparatus for electrodepositing a metal on a strip of dissimilar metal, a conductor roll for contacting and supplying electric current to said strip as it moves through said apparatus; said conductor roll comprising a closed hollow metallic tubular member possessing good electrical conductivity, a hard metallic protective coating on the outer surface of said closed hollow metallic tubular member, said coating being resistant to chemical attack by the solution used in the electroplating pro-

cess and means for circulating a cooling medium within said closed metallic tubular member whereby overheating is eliminated."

The alleged invention is accurately described by the examiner in his statement, as follows: "The specification and claims relate to a conductor roll. This conductor roll is for the purpose of conducting a continuous length of metal sheet or strip and for conveying electric current by contact to said sheet or strip. The conductor roll is provided at its ends with sliding electrical contacts which are in turn connected to a suitable source of electricity. The electric current is thus conveyed from its source through the conductor roll to the sheet or strip passing over and in contact with said roll. The conductor roll is provided on its cylindrical surface with a protective coating of hard metal, such as chromium. The roll is hollow and is also provided with means for conveying cooling water through the hollow interior to prevent the roll from getting overheated."

Claim 4 was rejected upon the patents to Levy et al., Brown, or Wynne-Williams; and claim 5, which calls for means for cooling the roll by circulation of water through the interior thereof, was rejected upon the three aforesaid references in view of the patent to Greer et al.

The Greer et al. patent discloses pairs of water-cooled hollow rolls in electrical contact with sheet material passed through an annealing furnace, one roll of each pair being connected to an electrical circuit. In that patent, the strip of sheet material is heated by the resistance of the current passing therethrough.

The patent to Levy et al. discloses a roll having a cylindrical portion over which is applied a chromium or stainless steel facing. The roll is provided with means for supplying electric current to the cylindrical face thereof.

Brown also discloses a roll having a cylindrical portion covered with a chromium outer layer. He provides means for supplying electric current to the cylindrical surface.

The British patent to Wynne-Williams discloses in its specification a roll which is said to contain an inner member of good electrical conductivity, which is surrounded by a stainless steel shell closely fitted to the inner member. The patentee states that the cathode drum may be mounted on a rotatable shaft through which the current passes.

In three of the references the rolls are used in the electrochemical art where it is desirable to deposit metal upon other metal through the action of electricity with an electrolyte. The deposited metal in the processes of these three patents is peeled or stripped off from the roll to form a thin sheet of metal or foil.

The Greer et al. rolls are used in a strip annealing furnace. All the other references disclose rolls with hard metallic outside coatings, used in the electrodeposition of metal. It will be observed, therefore, that the difference between the rolls disclosed in the cited prior art (regardless of what they are called) and the roll claimed by appellant rests chiefly in the use to which the respective rolls are put. Appellant's object is to place a permanent coating of tin or the like upon a hard metallic strip.

The Board of Appeals, in its first decision, agreed with the examiner that the devices of each of the references were suitable for electroplating metallic strips already formed, and that the claims called for nothing inventive over the prior art. It properly approved the holding of the examiner that the amendments offered constituted new matter and said:

"Whatever other designation the roll of the reference to Brown may have, it seems obvious that it is a conductor roll and that it could be used to direct a strip of metal over the same and the strip would, in effect, become a part of the roll at the point of contact and receive metal thereon the same as is deposited on the surface of the roll. So far as any efficacy to applicant's disclosure by reason of the amendment to page 1, line 8 of the specification, is concerned, the claims cannot depend on that amendment for support because it is matter not originally disclosed. As originally stated, the disclosure was said to relate to a conductor roll for establishing metallic strip material as an electrode and nothing seems to have been said about this strip being directed onto and passing from the roll. Appellant has proposed to amend the appealed claims by adding certain limitations as to the strip being directed onto the conductor roll and passing from the roll but the insertion of such an amendment is not recommended. It would apparently amount to a further limitation of matter already incorporated in

the specification which was not originally presented.

"Claim 5 has been rejected on the same grounds as claim 4 except that it calls for means for circulating a cooling medium within the conductor roll. The examiner has cited the patent to Greer et al to show that it is old to admit cooling water to hollow conductor rolls between which a strip of metal is to be passed. It is considered that such an addition to the other structure of the claim would not amount to a patentable improvement in view of the Greer et al patent.

"Appellant has discussed at great length the matter of amendment to the specification and drawing and states that it is thought to be obvious from the original specification, as illustrated and described from Figs. 1 and 2 of the proposed substitute drawings, that the combined conveyor and conductor roll must be positioned entirely outside of the electrolyte. Such matter was clearly not disclosed in the original and cannot be considered here. No reason is seen for considering this proposal in any detail since it involves matter not originally disclosed."

On appeal here, appellant assigned thirty-seven reasons of appeal and also filed a voluminous brief, reply brief, and a separate volume of 68 pages styled "Appendix to Brief for Appellant." The appendix consisted of a number of patents, evidently intended to disclose what those skilled in the art understood the term "conductor roll" to mean. The issues, however, were simplified by appellant's counsel at the time of oral argument by striking most of the reasons of appeal and withdrawing the appendix and the reply brief. Some irrelevant and improper matter still remains in the brief and in the record relating to subject-matter which has obviously been troublesome to the Patent Office and to this court. Much of the procedure which has been hereinbefore outlined is not to be commended, since it is not conducive to prompt and efficient Patent Office and court action.

■■■ The issues, when stripped of all unnecessary and unrelated matter, are quite simple. We have no right to consider new claims which appellant has suggested that we consider or to take cognizance of patents not before or considered by the tribunals below; and we may not consider the new matter injected into the case as aforesaid, which was refused by the tribunals below, since we think their refusal was fully justified.

The conductor roll defined in claim 4 is not materially different from those disclosed in the patents to Levy et al., Brown, and Wynne-Williams. The claim is an article claim, and, to be allowable, it should distinguish in a structural way from the prior art references. Appellant's argument for the allowance of the claim rests largely upon the claimed definition of the term "conductor roll." This, in effect, is an attempt to claim a new use for an old article. We are in agreement with the Patent Office tribunals that it is not inventive to use the rolls of the prior art in electrodepositing tin upon steel strip as is proposed by appellant. Nor would invention be imparted by providing for a cooling system on the interior of the roll, as is shown by Greer et al.

While it is not necessary to belabor the issue with reference to the meaning of the term "conductor roll", it is appropriate at this place to remark, as did the Solicitor for the Patent Office in his brief, that if appellant's contentions in that respect were accepted as correct, it would seem that they, within themselves, would defeat appellant's argument as to invention. If it is old in the art to electrodeposit metal on a strip which has been electrified by passing over an electrified roll and then into a plating bath, it is not seen how this matter could be helpful to appellant, for then in no event would it be a discovery by him.

■■■ For reasons stated herein and by the Board of Appeals, we are clearly of the opinion that the appealed claims define nothing inventive over the prior art references relied upon by the tribunals below, and the decision of the board is accordingly affirmed.

Affirmed.

GARRETT, P. J., did not participate in the consideration or decision of this case.